UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:11-CV-23763-CMA

| | |
|---|---|
| FREDY ROJAS and all others similarly situated under 29 U.S.C. 216(B), | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| SE INDEPENDENT DELIVERY SERVICES, INC. and CHARLIE TIPPING, | ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendants, SE Independent Delivery Services, Inc. ("SEIDS") and Charlie Tipping, by counsel and pursuant to Fed.R.Civ.P 56 and Local Rules 7.1 and 7.5, hereby submit this Motion for Summary Judgment and Incorporated Memorandum of Law in Support because no genuine issues of material fact exist as to the Amended Complaint Under 29 U.S.C. 201-216 Overtime Wage Violations (ECF No. 4) (the "Complaint") filed by Plaintiff, Fredy Rojas ("Rojas"), and Rojas' claims fail as a matter of law.   In support of this Motion, Defendants submit a concurrently filed Statement of Material Facts ("SOF") with attached exhibits.

**I.
INTRODUCTION**

The Complaint alleges Defendants were each an employer of Rojas and that Defendants failed to pay Rojas overtime wages for work performed in excess of 40 hours per week under the Fair Labor Standards Act, 29 U.S.C. §§ 201 through 216 (the "FLSA").  Defendants filed their Answer and Affirmative Defenses (ECF No. 17) denying the allegations that Rojas was entitled

to overtime pay from Defendants because, among other reasons, (1) Rojas could not establish either Defendant employed Rojas and (2) even if Rojas could do so, he was a driver hauling interstate freight and therefore exempt from overtime requirements under Section 13(b)(1) of the FLSA (the "Motor Carrier Exemption").  As shown below, Rojas' claims have no merit.

## II.
## SUMMARY OF UNDISPUTED FACTS[1]

SEIDS is a motor carrier responsible for coordinating the southern Florida home delivery of furniture products for its customer, RTG Furniture Corp. ("Rooms To Go").  SEIDS does not own delivery equipment or employ drivers, but it instead enters into contracts with independent businesses to make the actual deliveries.  Jose Mago and his business entity, Smart Road Corp. (collectively, "Mago"), was one such business.  Mago owned three trucks, and he employed at least five individuals to help him operate the trucks and accomplish home deliveries.  Mago was wholly responsible for all costs associated with the vehicles, and he was in complete control of his drivers and helpers, as detailed in the Equipment Lease and Truckman's Agreement (the "Mago Lease") between Mago and SEIDS.

Rojas became a truck driver for Mago in March, 2009.  Mago and Rojas themselves set the terms and conditions of Rojas' relationship, including the pay rate ($150 a day), and Rojas and Mago even entered into a written agreement (the "Rojas Mago Contract") detailing the work to be performed, the benefits to be provided Rojas by Mago, and the obligations and prohibitions on Rojas.  Rojas began work for Mago after Rojas passed a road test, a written English test, a physical examination, and a drug test, all of which were ordered by Mago and required by federal safety regulations promulgated by the U.S. Department of Transportation ("DOT").

---

[1] Pursuant to Local Rule 7.5, Defendants have identified all material facts not in dispute in the concurrently-filed SOF.  The summary of facts contained in this Motion and Memorandum is designed solely to provide context, and it is not placed here as a replacement for the SOF.

Mago paid for all expenses associated with operating the truck Rojas drove, including fuel, maintenance, and repair.  Mago also paid for Rojas' use of a helper for home deliveries.  Rojas, however, in his own discretion hired additional helpers at Rojas' expense, and Rojas determined when to take breaks.  Mago told Rojas when to report for work and how many days he would work each week.  At the end of the week, Mago paid Rojas by check, signed by Mago.  Rojas looked solely to Mago for additional money and for time off.  Rojas likewise went to Mago with pay disputes, and he settled those disputes solely with Mago.

In performing home delivery work, Rojas entered his availability three days out, and Rojas constructed his own route, including delivery orders and the timeframe for making deliveries.  Mago or Rojas on Mago's behalf sent the route to SEIDS for communication with the end-user consumer and for loading and movement of the furniture to a Miami drop yard for final delivery by Mago or Rojas.[2]  On the day of delivery, Rojas and his helpers loaded the furniture products onto the straight truck Rojas drove.  No one supervised Rojas in his loading, which normally took one hour.  The remainder of his day, 9-10 hours, was spent in the truck making deliveries.

Rojas considered himself to be an independent businessman working for Mago.  Rojas received Internal Revenue Service ("IRS") Form 1099s from Mago, and Rojas provided IRS Form 1099s to the workers Rojas hired.  Rojas asserted he was self-employed on his IRS tax returns, including entries for the receipt of non-employee income and business expense

---

[2]  The furniture was sent to Mago and Rojas from the Rooms To Go Lakeland facility.  Approximately 95% of the furniture at the Lakeland facility originated outside Florida, and 60% originated outside the United States whereby Rooms To Go took possession as soon as the product left its overseas port.  Although 70% of the furniture was ready for next day delivery, that furniture generally paused at the Lakeland facility for 90 days or less.  Moreover, 10% of the furniture from the Lakeland facility on back order, and furniture would have a known destination to the end-user consumer's home prior to entering the state and pass directly through the Lakeland facility without delay.

deductions.  Mago did not make any withholdings from Rojas' pay.  Rojas did not receive overtime pay from Mago, nor did Rojas pay his own workers overtime.  Rojas' last delivery for Mago occurred on April 16, 2011.  Rojas stopped making deliveries for Mago when Mago's contract with SEIDS was terminated.

SEIDS played no part in the start or end dates of Rojas' work for Mago, other than to ensure Rojas qualified under DOT regulations.  SEIDS did not set Rojas' schedule, nor did it play any role in Rojas' hiring or use of helpers.  SEIDS did not receive, review, or even have knowledge of the existence of the Rojas Mago Contract.  SEIDS did not set nor did it know Rojas' pay rate.  SEIDS never cut a single check to Rojas or provide payment, compensation, or benefits to Rojas in any form.  Rather, SEIDS provided a weekly settlement check to Mago based on all of the deliveries Mago's trucks made.  The settlement sheets provided by SEIDS did not identify Rojas or contain information identifying deliveries made by Rojas.

SEIDS never disciplined Rojas, never instructed Rojas to appear for deliveries at any particular time of day, and never guaranteed Rojas work.  Rojas did not perform any duties directly for SEIDS, nor did Rojas have any contractual relationship with SEIDS, written or otherwise.  The Rojas Mago Contract expressly prohibited the existence of a relationship between Rojas and SEIDS.  SEIDS was concerned only with the end result of delivery, i.e., ensuring the end-user consumer received the furniture they ordered.

Rojas has never met nor spoken with Charlie Tipping.  Charlie Tipping does not own SEIDS, and he played no part in determining Rojas' pay, schedule or other conditions under which Rojas performed home deliveries.

# III.
# ARGUMENT

## A.
## Standard of Review

When there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Rule 56(c)); *see also Imaging Bus. Mack, LLC v. BancTec, Inc.*, 459 F.3d 1186, 1189 (11th Cir. 2006). A determination of employment status under the FLSA is a question of law. *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997); *Rodriguez v. Jones Boat Yard, Inc.*, 435 Fed.Appx. 885, 888 n.2 (11th Cir. 2011); *Tafalla v. All Florida Dialysis Servs., Inc.*, No. 07-80396, 2009 WL 151159 at *5 (S.D. Fla. Jan. 21, 2009) (citing *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996)). A determination of whether the FLSA covers or excludes from its coverage certain individuals likewise constitutes a question of law. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 715 (1986); *see also Viart v. Bull Motors, Inc.*, 149 F. Supp. 2d 1346, 1349 (S.D. Fla. 2001) (indicating "determination of whether a given employee falls within the scope of a FLSA exemption, while based"). As such, determinations of whether an employer is liable under, or an individual is exempt from, the FLSA are ripe for resolution at the summary judgment stage. *See Worthington*, 475 U.S. at 715; *Villarreal*, 113 F.3d at 205; *Antenor*, 88 F.3d at 929; *Rodriguez*, 435 Fed.Appx. at 888; *Viart*, 149 F. Supp. 2dF. Supp. 2d at 1349.

Although a court should view the facts in the nonmoving party's favor, this requirement only "extends to genuine disputes over material facts and not where all that exists is 'some metaphysical doubt as to the material facts.'" *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

When the moving party fulfills its summary burden, "the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Eslinger*, 605 F.3d at 848; *see also Matsushita*, 475 U.S. at 586. The "mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). When "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," all other facts are rendered immaterial and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322; *see also Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 872 (11th Cir. 2009) (indicating "summary judgment should be granted when there is "a complete failure of proof concerning an essential element of the nonmoving party's case").

### B.
### <u>Rojas Improperly Named Charlie Tipping As A Defendant</u>

Rojas named Charlie Tipping as a Defendant because he heard Charlie Tipping owned SEIDS. Charlie Tipping, however, does not own SEIDS, and he does not exhibit the properties necessary to establish individual liability for an FLSA violation.

Individual liability under the FLSA only attaches to a corporate officer with day to day control over the details of an operation or a direct responsibility for the supervision of the worker in question. *Powell v. Carey Intern., Inc.*, 483 F. Supp. 2d 1168, 1183 (S.D. Fla. 2007)(citing *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986)). Specifically, the proper criteria for analyzing whether an individual is an employer is whether the individual (1) had the power to hire and fire, (2) supervised or controlled work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records. *Id.*

In *Powell*, the Court rejected the plaintiffs' attempt to impose individual liability on an employer's corporate officer even though the officer was accused of firing an employee for complaints made by the employee and even over the claim that the corporate officer was "the top management" and that everything "was done at his direction." *Id*., nn.22-23. The Court properly granted summary judgment in favor of the officer because he "did not exercise operational control over Plaintiffs (and that he never spoke to most of them) . . . ." *Id*. at 1184.

Here, Mago, not Charlie Tipping, was responsible for contracting with Rojas. *SOF* at 54-55, 69. Likewise, Charlie Tipping had no supervision or control over Rojas' work schedule or working conditions, he did not determine Rojas' pay rate or method of payment, and there is no suggestion that he kept employee records on Rojas. *SOF* at 74. Just like in *Powell*, Charlie Tipping cannot be deemed Rojas' employer, and summary judgment on this issue should be granted in Charlie Tipping's favor.[3]

## C.
### Rojas's Autonomy Belies His New Claim Of Employment

Rojas seeks from SEIDS recovery of wages for work performed in excess of 40 hours per week, but the undisputed facts demonstrate SEIDS did not employ Rojas, directly or indirectly. Indeed, the undisputed facts show Rojas was employed solely by Mago.

## 1.
### SEIDS Did Not Suffer Or Permit Rojas To Work

The FLSA provides an avenue for recovery of overtime wages by employees from their employer. 29 U.S.C. § 216(b). The FLSA, like other federal welfare legislation, defines the

---

[3] The remainder of this Brief and Memorandum presumes that Charlie Tipping was improperly named as a Defendant and will be dismissed. To the extent Charlie Tipping remains a Defendant, he made decisions as an employee of SEIDS and the references to SEIDS throughout the remainder of this Brief and Memorandum would apply equally to and warrant summary judgment in favor of Charlie Tipping.

term "employee" to mean "any individual employed by an employer."  29 U.S.C. § 203(e)(1); *see also, e.g.*, 42 U.S.C. § 2000e(f) (defining the term "employee" to mean "an individual employed by an employer" for purposes of Title VII).  The term "employer" means "'any person acting directly or indirectly in the interest of an employer in relation to an employee . . . .'" *Villarreal*, 113 F.3d at 205 (quoting 29 U.S.C. § 203(d)).  And the term "employ" means to "'suffer or permit to work.'"  *Id.* (quoting 29 U.S.C. § 203(g)).

As a threshold matter, it should be noted the undisputed facts reflect only one employment relationship, and that is the relationship between Rojas and Mago, as demonstrated by the Rojas Mago Contract.  *SOF* at 4-9.  The undisputed facts further demonstrate the absence of any contractual relationship, of employment or otherwise, between Rojas and SEIDS.  *SOF* at 70.  This absence of a contractual relationship, itself, negates any notion of an employment relationship.  *See, e.g.*, *Demski v. U.S. Dep't of Labor*, 419 F.3d 488, 492 (6th Cir. 2005).

If the absence of a contract, written or otherwise, was somehow not dispositive, the Eleventh Circuit has found the absence of any control over the remuneration received by a worker in and of itself negates the existence of an employment relationship.  *See, e.g.*, *Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236, 1243 (11th Cir. 1998) (finding "only individuals who receive compensation from an employer can be deemed 'employees'" for purposes of Title VII); *see also O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997).  SEIDS had no control over any payroll decisions related the remuneration paid to Rojas for services he performed pursuant to his agreement with Mago.  *SOF* at 58-59.  Mago alone made decisions related to Rojas' remuneration, and Mago alone compensated Rojas.  *SOF* at 6-9, 30-37.  SEIDS provided Rojas with no compensation and maintained no payroll or other employment records related to Rojas.  *SOF* at 58-59.

Even in cases in which the broader economic realities of the parties' relationship is considered, the lack of remuneration is important, as is the lack of control or supervision over the worker. *Villarreal*, 113 F.3d at 205. SEIDS, however, neither exercised control over nor supervised Rojas' work schedule or conditions. *SOF* at 57-61. Instead, Mago alone maintained responsibility for the supervision and control of the conditions of Rojas' employment. *SOF* at 5-9, 30-38. To that end, Mago controlled Rojas' daily activities and assigned his work and job duties. *SOF* at 30-31. Moreover, Mago (or Rojas on behalf of Mago) solely determined the routing and delivery timing, and reported the determination to SEIDS. *SOF* at 22-24, 38-40, 65-67.

SEIDS' only interest in the activities of Mago and Rojas involved confirmation that furniture deliveries were made in the window set by Mago and Rojas and reported to the customer or client. *SOF* at 67-68. The Eleventh Circuit, however, has confirmed that no employment relationship results from the fulfillment of specifications set by the customer or client who commissioned the work. *See Freund v. Hi-Tech Satellite, Inc.*, 185 Fed. Appx. 782, 783 (11th Cir. 2006) (holding the economic reality of the circumstances at issue demonstrated no employment relationship existed as a matter of law even though alleged employee was required to fulfill customer expectations and upholding summary judgment in favor of alleged employer); *see also Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1255 (11th Cir. 2004) (finding requirement to wear uniform as requested by customer of alleged employer did not give rise to an employment relationship).[4]

---

[4]This principle has been confirmed by courts in multiple jurisdictions. *E.g., FedEx Home Delivery v. NLRB*, 563 F.3d 492, 497 (D.C. Cir. 2009) (rules based on concern for customer service generally "do not create an employee relationship"); *C.C. Eastern, Inc. v. NLRB*, 60 F.3d 855 (D.C. Cir. 1995) (noting that when "a company's control over an aspect of the worker's performance motivated by a concern for customer service, that control does not suggest an

Finally, the undisputed facts demonstrate SEIDS had no actual control over the right to hire and fire Rojas.  Instead, Mago solely maintained responsibility to recruit, retain and/or dismiss Rojas, as well as ensure Rojas fulfilled the requirements set by shippers, such as Rooms To Go, and the federal government.  *SOF* at 5-13.  While the Federal Leasing Regulations, 49 C.F.R. Part 376, and Federal Motor Carrier Safety Regulations, 49 C.F.R. Parts 382-97 required SEIDS to ensure any drivers operating under the operating authority issued to SEIDS by the U.S. Department of Transportation ("DOT") fulfilled certain requirements, multiple authorities have confirmed compliance with government regulations is not evidence of the type of control that creates an employment relationship.  *FedEx Home Delivery*, 563 F.3d at 497; *Air Transit, Inc. v. NLRB*, 679 F.2d 1095, 1100 (4th Cir. 1982) (finding "government regulations constitute supervision not by the employer but by the state" and noting that "requiring drivers to obey the law is no more control than would be a routine insistence upon the lawfulness of the conduct of those persons with whom one does business" (quotation omitted)).[5]

---

employment relationship because it is addressed to the ends to be achieved rather than the means to achieve that result" (citation omitted)). *See also, e.g.*, *Herman v. Mid-Atlantic Installation Servs.*, 164 F.Supp.2d 667, 672-73 (D. Md. 2000); *Penn v. Virginia Int'l Terminals, Inc.*, 819 F.Supp. 514, 524-25 (E.D. Va. 1993) (declining to find evidence that a motor carrier directed driver as to when and where to deliver  load resulted in finding of employment relationship because motor carrier's customers set the delivery times); *Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 676 S.E.2d 700, 702-03 (2009) (finding presence of GPS system in each delivery truck did not constitute evidence of "control" by delivery company because GPS "monitoring was for the benefit of [the delivery company's] customers tracking the shipment of the goods"); *Larmon v. CCR Enters.*, 647 S.E.2d 306, 307-08 (Ga. Ct. App. 2007) (rejecting argument that third-party requirements constituted evidence of defendant's control over the time, manner, and method of executing work); *McLaine v. McLeod*, 661 S.E.2d 695, 700 (Ga. Ct. App. 2008) (noting delivery company does not exert control over the driver performing the delivery if delivery company simply passes along the customer-required delivery time); *Hilldrup Transfer & Storage of New Smyrna Beach, Inc. v. Dep't of Lab. & Emp't Sec.*, 447 So.2d 414, 417 (Fla. Ct. App. 1984).

[5] *See also SIDA of Hawaii, Inc. v. NLRB*, 512 F.2d 354, 359 (9th Cir. 1975) (indicating "the fact that a putative employer incorporates into its regulations controls required by a government agency does not establish an employer-employee relationship"); *Wilkinson*, 382 S.C. at 302, 676

The application of the Eleventh Circuit's economic reality factors confirms the lack of an employment relationship between Rojas and SEIDS.  *Villarreal*, 113 F.3d at 205.  As such, the FLSA provides Rojas no avenue for recovery from, nor imposes any liability upon, SEIDS for alleged overtime wages to Rojas, and Rojas' claims should be dismissed.

## 2.
## Rojas was Solely Employed by Mago

Bereft of any hint of a direct employment relationship, Rojas' only conceivable avoidance of a bad faith claim would seemingly lie in a desire to test the bounds of the joint employment doctrine and attempt to prove "a single individual stands in the relation of an employee to two or more persons at the same time."  *Gonzalez-Sanchez v. Int'l Paper Co.*, 346 F.3d 1017, 1020 (11th Cir. 2003); *see also Martinez-Mendoza v. Champion Int'l Co.*, 340 F.3d 1200, 1207-08 (11th Cir. 2003).  The doctrine, however, only applies if a worker is dependent on both a principle contractor and the sub- or independent contractor who retained the worker.  *Gonzalez-Sanchez*, 346 F.3d at 1021; *see also Martinez-Mendoza*, 340 F.3d at 1208.  Where, as here, "the two entities are commonly disassociated with respect to the employment of a particular employee, a joint employment situation does not exist."  *Gonzalez-Sanchez*, 346 F.3d at 1021.

---

S.E.2d at 703 (holding "requiring a worker to comply with the law is not evidence of control by the putative employer"); *Hernandez v. Triple Ell Transp., Inc.*, 175 P.3d 199 (Idaho 2007) (noting "[l]ittle effort is necessary to conclude that . . . adherence to federal law is no evidence of . . .control"); *Universal Am-Can v. Workers' Comp. Appeal Bd.*, 762 A.2d 328, 336 (Pa. 2000) (indicating "obligations imposed by law upon a motor carrier . . . when leasing equipment from an owner-operator are not probative of the question of whether the carrier exercises control over the manner of the work to be performed by the owner-operator.  The regulations reflect the control of the government, not the motor carrier"); *Choto v. Consolidated Lumber Transp., Inc.*, 918 N.Y.S.2d 268, 270 (N.Y. App. Div. 2011) (finding evidence of motor carrier compliance with government regulations "should not be found to be dispositive of an employee-employer relationship").

A worker's economic dependence turns on no precise formula; instead, courts examine multiple factors, none of which are dispositive. *Gonzalez-Sanchez*, 346 F.3d at 1021; *see also Martinez-Mendoza*, 340 F.3d at 1208-09. These factors include the same factors considered by courts for purposes of determining whether a direct employment relationship exists. *Compare Villarreal*, 113 F.3d at 205, *and Gonzalez-Sanchez*, 346 F.3d at 1021 (citing *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996)), *Martinez-Mendoza*, 340 F.3d at 1208.

For example, one consideration for purposes of determining whether a joint employment relationship exists includes whether the alleged joint employer prepared and or maintained payroll records for the workers at issue. *Antenor*, 88 F.3d at 936. This is relevant to the determination of joint employment status because of "the likelihood that when a business undertakes to help an independent contractor prepare its payroll and pay its wages, it is likely that the contractor lacks economic substance on which the workers can solely depend." *Id.* And whether an alleged joint employer makes payroll decisions requires an examination of whether the alleged joint employer makes decisions related to "the amount of compensation to be paid," the benefits the worker receives, including worker's compensation insurance and social security, and how payments to workers are allocated. *Id.* Method of payment "refers to the basis upon which a worker is paid, for example, by the hour or by the piece." *Id.*

Applying these principles here, and as discussed in more detail above, Rojas has no colorable claim because SEIDS (1) did not maintain or prepare payroll documents related to Rojas ; (2) had no control over any payroll decisions related the remuneration paid to Rojas; (3) made no decisions related to tax or insurance withholding to be maintained on behalf of Rojas; and (4) paid no compensation to Rojas. *SOF* at 6-9, 30-37, 58-59.

The degree of control exercised by a putative employer, discussed above with respect to the direct employment question, is likewise relevant to the question of a joint employment relationship. *Id.* at 932. To that end, the "Eleventh Circuit has stated that control over an employee by a putative employer exists when that employer determines the number of workers hired for a job, when work should begin on a particular day, which workers should be assigned to specific tasks and whether a worker should be disciplined or retained." *Tafalla*, 2009 WL 151159 at *6 (citing *Antenor*, 88 F.3d at 933). And whether the putative joint employer supervised the relevant work "includes overseeing the work and providing direction on a regular, even daily basis." *Tafalla*, 2009 WL 151159 at *7 (citing *Antenor*, 88 F.3d at 935). Some communication related to oversight of operations for purposes of quality control lack the necessary frequency and degree to be termed supervision. *Martinez-Mendoza*, 340 F.3d at 121.

But, as noted above, the application of this factor to the circumstances surrounding the relationship (or lack thereof) between SEIDS and Rojas establish the complete absence of a joint employment relationship. *Tafalla*, 2009 WL 151159 at *6 (citing *Antenor*, 88 F.3d at 933). The undisputed facts demonstrate SEIDS in no way limited the number of trucks owned by Mago nor the number of workers Mago hired to operate those trucks. *SOF* at 1-4, 16, 54, 56. And Mago alone maintained responsibility for the supervision and control of the conditions of his workers' employment, including Rojas' work schedule and the specific work to be performed by Rojas. *SOF* at 30-37. Indeed, Rojas, at his own discretion, hired his own workers to help him, and Rojas, himself, fixed the terms and conditions of work for those workers as well as when to take breaks. *SOF* at 16, 39-40, 56. Indeed, Mago (and Rojas on behalf of Mago) set the times, delivery order and routing for the deliveries, all of which eviscerates any thought of control over

Rojas. *SOF* at 22, 38-40, 65. *See, e.g.*, *Freund*, 185 Fed. Appx. at 783; *Morrison*, 383 F.3d at 1255.

A final overlapping consideration includes whether the putative joint employer holds the right to hire and fire the relevant workers. *Antenor*, 88 F.3d at 932; *Tafalla*, 2009 WL 151159 at *7. For purposes of the joint employment determination, the Eleventh Circuit recognizes the simple fact that the alleged joint employer "can pressure an employer into firing a particular individual" does not create a joint employment relationship; instead the relevant inquiry is whether the alleged joint employer has the power to hire or fire the individual directly. *Morrison*, 383 F.3d at 1255. To that end, the ability of a general contractor to terminate a sub-contract agreement is likewise irrelevant to the determination of joint employment status because it does not demonstrate the general contractor has the ability to hire and fire individual workers retained by the subcontractor. *Tafalla*, 2009 WL 151159 at *7.

Here, and as noted above, Mago solely maintained responsibility to recruit, hire, retain and/or dismiss Rojas, and Mago was ultimately responsible for ensuring Rojas fulfilled the requirements set by shippers, such as Rooms To Go, and the federal government. *SOF* at 5-13. Although SEIDS eventually terminated the Mago Lease, this action has no bearing on whether SEIDS was the joint employer of Rojas. *Tafalla*, 2009 WL 151159 at *7. SEIDS simply had no power to directly hire or fire workers retained by Mago, including Rojas. As such, no joint employment relationship can be found. *Morrison*, 383 F.3d at 1255.

Additional considerations for purposes of determining whether a joint employment relationship exists include whether the alleged joint employer provides tools and equipment and owns the work facilities upon which the work is performed. *Gonzalez-Sanchez*, 346 F.3d at 1021; *see also Martinez*, 340 F.3d at 1208; *Tafalla*, 2009 WL 151159 at *5. Whether the joint

employer provides the tools and equipment is "probative because it is more likely that a worker is economically dependant on the entity that supplies the equipment or the facilities necessary to perform the work in question." *Beck v. Boce Group, L.C.*, 391 F. Supp. 2d 1183, 1192 (S.D. Fla. 2005). Further, ownership of the facilities where the work is performed is considered relevant because "a business that owns or controls the worksite will likely be able to prevent labor law violations, even if it delegates hiring and supervisory responsibilities to labor contractors." *Martinez-Mendoza*, 340 F.3d at 1214 (quoting *Charles v. Burton*, 169 F.3d 1322, 1328 (11th Cir. 1999)). The Eleventh Circuit recognizes some workers do not perform the majority of their work in a building or on a particular piece of land; instead the relevant "facilities" may include the equipment operated by the worker. *Morrison*, 383 F.3d at 1255 (deeming pilot's worksite to be the airplane flown by the pilot because the pilot spent the majority of his work time in the airplane).

Here, SEIDS did not provide Rojas with any tools or equipment. Instead, Mago, not SEIDS, owned the truck where Rojas spent the majority of the time during which he completed his work. *SOF* at 3-7, 12. Indeed, Rojas spent one hour each day loading his truck, and he spent the remainder of the day making deliveries in the truck (9-10 hours) and in the homes of end-user consumers (one hour). *SOF* at 28. Because SEIDS did not supply "the equipment or the facilities necessary to perform the work in question," these factors squarely weigh in favor of finding SEIDS was not the joint employer of Rojas. *Beck*, 391 F. Supp. 2d at 1192; *see also Morrison*, 383 F.3d at 1255.

The undisputed facts demonstrate Rojas was entirely economically dependent on *Mago*, not SEIDS. As such, SEIDS respectfully submits that as a matter of law, SEIDS did not jointly employ Rojas. Because the FLSA provides Rojas no avenue for recovery from, nor imposes any

liability upon, SEIDS as a joint employer, summary judgment should be granted to SEIDS. 29

U.S.C. § 216(b); *Gonzalez-Sanchez*, 346 F.3d at 1023; *Martinez-Mendoza*, 340 F.3d at 1216.

**D.**
**Even If Rojas Had Been An Employee,**
<u>**the Motor Carrier Exemption Precludes Overtime Pay**</u>

The utter lack of employment relationship notwithstanding, Rojas is not entitled to

overtime pay in any event because the Motor Carrier Exemption applies. Specifically, the Motor

Carrier Exemption "exempts from the [FLSA] overtime pay requirement any employee with

respect to whom the Secretary of Transportation [(the "Secretary")] has power to establish

qualifications and maximum hours of service pursuant to the . . . Motor Carrier Act." *Abel v. S.

Shuttle Servs., Inc.*, 631 F.3d 1210, 1212 (11th Cir. 2011). Whether the Motor Carrier

Exemption applies "'is dependent on whether the Secretary has the power to regulate, not on

whether the Secretary has actually exercised such power.'" *Id.* (quoting *Baez v. Wells Fargo

Armored Serv. Corp.*, 938 F.2d 180, 181 n. 2 (11th Cir. 1991)). The Secretary[6] has the power to

regulate common and contract carriers, and, toward that end, "may establish reasonable

requirements with respect to . . . qualifications and maximum hours of service of employees, and

safety of operation and equipment." 49 U.S.C. § 304(a)(1)(2).

Pursuant to the Motor Carrier Exemption, an employee is not entitled to overtime pay

under the FLSA when the employee is:

---

[6] Public Law 89-670 transferred to and vested in the Secretary all functions, powers, and duties
of the Interstate Commerce Commission under sections 204(a)(1) and (a)(2) of the Motor Carrier
Act of 1935 to the extent they relate to qualifications and maximum hours of service of
employees and safety of operations and equipment.

1.      Employed by an employer subject to the jurisdiction of the Secretary; and

2.      Engaged in activities of a character directly affecting the safety of operations of motor vehicles in the interstate transportation of passengers or property.

*Id.* (citing 29 C.F.R. § 782.2); *see also Mena v. McArthur Dairy, LLC*, 352 Fed. Appx. 303 (11th Cir. 2009); *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009); *Baez*, 938 F.2d at 181-82; *Roberts v. Levine*, 921 F.2d 804, 810-811 (8th Cir. 1990); *Alvarado v. I.G.W.T. Delivery Sys., Inc.*, 410 F. Supp. 2d 1272, 1276 (S.D. Fla. 2006).[7]  When determining whether an employee satisfies the second prong of the Motor Carrier Exemption, the Eleventh Circuit recognizes "purely intrastate transportation can constitute part of interstate commerce if it is part of a continuous stream of interstate travel.  For this to be the case, there must be a practical continuity of movement between the intrastate segment and the overall interstate flow." *Walters*, 575 F.3d at 1226; *see also Abel*, 631 F.3d at 1215 (recognizing multiple cases that "make clear that trips within a single state are made in interstate commerce when they are part of a practical continuity of movement of the goods in interstate commerce."  (citing cases)); *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 569 (1943) (holding brief warehousing stops are not sufficient to terminate the interstate nature of freight shipments); *Central Freight Lines v. I.C.C.*, 899 F.2d 413, 420 (5th Cir. 1990) (finding storage of freight in terminals in destination-state for up to 30 days quash interstate nature of final delivery of freight).

Recently, the Eleventh Circuit found the Motor Carrier Exemption precluded a local delivery driver from receiving overtime compensation under the FLSA.  *Mena*, 352 Fed. Appx. at 307.  In *Mena*, a dairy product distributor had prepackaged dairy products shipped to its

---

[7]  The Motor Carrier Exemption exists to "eliminate and conflict between the jurisdiction exercised by the Department of Labor . . . over the FLSA and the mutually exclusive jurisdiction exercised by the [Department of Transportation ("DOT")] over the [Motor Carrier Act]." *Walters*, 575 F.3d at 1226.

warehouse in Florida from locations outside of the state.  From the warehouse, employees of the distributor delivered the products to the distributor's customers based in part on "customers' projected needs, as calculated by customers' past purchases."  *Id.* at 307.  The distributor argued the Motor Carrier Exemption precluded the delivery driver from the receipt of overtime pay.  *Id.*

The court first found the distributor was subject to the jurisdiction of the Secretary of Transportation because, among other things, the employer was registered with the DOT as a motor carrier.  *Id.* at 306.  The court next found the driver's conduct of operating the truck directly affected the safety of the operation of a motor vehicle in the interstate transportation of property.  *Id.* at 307; *see also Alvarado*, 410 F. Supp. 2d at 1277 (finding Motor Carrier Exemption applied to delivery drivers who did not cross state lines because the drivers delivered packages to and from terminals for delivery to interstate destinations and noting "the work of an employee who is a fill-duty or partial duty driver . . . directly affects safety of operation within the meaning of the Motor Carrier Act whenever he drives a motor vehicle in interstate commerce" (internal quotations omitted)).

While the driver in *Mena* argued his work did not involve the interstate transportation of goods because the products he delivered were stored in the warehouse before the driver delivered the goods to the customer, the court deemed the distributor's warehouse to be nothing more than a "temporary storage hub used to facility the orderly distribution of products through interstate commerce."  352 Fed. Appx. at 307.  And even though the driver argued the Motor Carrier Exemption should not apply because he never crossed state lines, the court found the driver's work involved interstate commerce because his transportation of the dairy products manufactured outside Florida was "was part of the 'practical continuity of movement' across state lines."  *Id.* at 307 (quoting *Walters*, 575 F.3d at 1226 (finding bus drivers who never

crossed state lines but transported passengers from an airport to a seaport were subject to the Motor Carrier Exemption because the transportation of the passengers was part of the practical continuity of movement of interstate travel)); *see also Cruz v. Southern Waste Sys., LLC*, No. No. 09-21756-CIV, 2010 WL 309016, at *5 (S.D. Fla. Jan. 25, 2010) (applying the Motor Carrier Exemption to preclude driver from receipt of overtime pay even though (1) the driver did not cross Florida state lines, (2) the products the driver delivered remained in storage 30-60 days, and (3) orders for the products were placed after the products were delivered to the warehouse).

Applying these principles here, Rojas is exempt from the receipt of overtime pay under the FLSA because the undisputed facts demonstrate the requirements of the Motor Carrier Exemption are fulfilled.  SEIDS is unquestionably a motor carrier of property operating under the authority of the DOT, an agency under the jurisdiction of the Secretary.  *SOF* at 9, 50. Likewise, Rojas' operation of Mago's truck directly affected the safety of motor vehicle operation, as Rojas drove a truck with a gross vehicle weight rating that exceeded 10,001 pounds.  *SOF* at 3, 50; *Mena*, 352 Fed. Appx. At 307; *Alvarado*, 410 F. Supp. 2d at 1277.

Finally, even though Rojas never crossed state lines, he, like the delivery drivers in *Mena*, *Alvarado*, *Walters*, and *Cruz*, who never crossed state lines, completed transportation services that were part of the practical continuity of movement across state lines.  *Mena*, 352 Fed. Appx. at 307; *Alvarado*, 410 F. Supp. 2dF. Supp. 2d at 1277; *Walters*, 575 F.3d at 1226; *Cruz*, 2010 WL 309016, at *5.  This is so even though the furniture products temporarily rested at the Lakeland facility.  In general, the furniture products are paced through the Lakeland facility based on consumer demand and by studying past and current consumer order patterns.  *SOF* at 78.  Furniture generally does not remain at the Lakeland facility more than 90 days.  *SOF* at 78.

More importantly, 10% of the furniture that moved through the Lakeland facility was subject to back order and subject to immediate delivery upon arrival at the facility, as the end-user consumer would have been known prior to the furniture coming into the state. *SOF* at 79. In short, the Lakeland facility, similar to the facility in *Mena*, was at most, a "temporary storage hub used to facilitate the orderly distribution of products through interstate commerce." 352 Fed. Appx. at 307.

Indeed, any effort by Rojas to dispute the interstate nature of his work would be negated by Rojas' allegations to the contrary in the Complaint. Specifically, Rojas alleged his "work for the Defendants affected interstate commerce for the relevant time period because the materials and goods that Plaintiff used and transported on a constant and/or continual basis . . . moved through interstate commerce prior to and/or subsequent to Plaintiff's use of the same." *Complaint*, ¶ 10. And the undisputed facts confirm the freight delivered by Rojas originated from various locations throughout the United States. *SOF* at 75-76.

In sum, the undisputed facts show that all of the requirements for the Motor Carrier Exemption are met here. As such, even if the Court finds SEIDS somehow employed Rojas, the Motor Carrier Exemption precludes Rojas from recovering overtime as a matter of law.

## IV.
## CONCLUSION

The undisputed facts demonstrate Rojas was not employed by Defendants, as a joint employer or otherwise. As such, the FLSA provides Rojas no avenue for recovery from, nor imposes any liability upon, Defendants for alleged overtime wages. The undisputed facts further demonstrate that even if Rojas were found to be an employee of Defendants, the Motor Carrier Exemption exempts Rojas from the payment of overtime. For the foregoing reasons, Defendants respectfully request that the Court grant this Motion for Summary Judgment.

Dated:  April 10, 2012                 PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT P.L.
                                       1000 Brickell Avenue, Suite 600
                                       Miami, FL 33131
                                       (305) 377-0086 Phone
                                       (305) 724-4008 Cell
                                       (305) 724-0781 Fax

                                       /s/ J. Ronald Denman
                                       J. Ronald Denman
                                       Fla. Bar No. 863475
                                       E-Mail:  jrdenman@pbyalaw.com

                                       Miguel Armenteros
                                       Fla. Bar No. 0014929
                                       Email: Miguel@pbyalaw.com

                                       A. Jack Finklea, *pro hac vice*
                                       SCOPELITIS, GARVIN, LIGHT, HANSON
                                       & FEARY, P.C.
                                       10 West Market Street, Suite 1500
                                       Indianapolis, IN 46204
                                       (317) 637-1777 Phone
                                       (317) 687-2414 Fax
                                       jfinklea@scopelitis.com

                                       Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically on April 10, 2011.

Notice of this electronic filing will be sent to the following parties of record by the operation of

the Court's electronic filing system:

David L. Markel
J.H. Zidell
Davidmarkel11@gmail.com

Jamie H. Zidel
J.H. Zidel
zabogado@aol.com

/s/ Ronald Denman
Ronald Denman

H:\Users\bleive\Documents\SE\By Rojas 12384.5\Pleadings\Summary judgment\Summary Judgment Motion and Brief in Support.doc